**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KAREN EDWARDS PARQUET | ) | Case No. 23-11323-BFK |
| and TREMAYNE ANTHONY PARQUET, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION AND
ORDER OVERRULING IN PART AND SUSTAINING
IN PART TRUSTEE'S OBJECTIONS TO DEBTORS'
AMENDED CHAPTER 13 PLAN, AND CONTINUING TRUSTEE'S
MOTION TO DISMISS**

This matter comes before the Court on the Chapter 13 Trustee's Objections to the

Debtors' Amended Chapter 13 Plan, and Motion to Dismiss Case. Docket Nos. 23 (Amended

Plan), 30 (Trustee's Objections), and 29 (Trustee's Motion to Dismiss). The Debtors filed a

Response to the Trustee's Motion to Dismiss and Objections to their plan. Docket Nos. 31, 32.

The Court heard the evidence and the parties' arguments on December 21, 2023. For the reasons

stated below, the Court will overrule the Trustee's Objections on the disposable income ground.

The Court will sustain the Trustee's Objections on the good faith ground, and the Debtors will be

granted leave to amend their Plan and their Means Test within 21 days. The Court will also

continue the hearing on the Trustee's Motion to Dismiss Case.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.[1]

---

[1] Paragraphs 1-10, below, are taken from the Court's Order Sustaining Trustee's Objections to Confirmation of
Chapter 13 Plan, with minor edits. Docket No. 17.

1.      The Debtors,  Karen Edwards Parquet and Tremayne Anthony Parquet, are

individuals residing in Alexandria, Virginia. They filed a joint Voluntary Petition under Chapter

13 with this Court on August 19, 2023. Docket No. 1. The six-month look back period for the

Means Test started on February 1, 2023, and ended on July 31, 2023.

2.      The Debtors are "above median" debtors. Docket No. 1, p. 53 (Means Test). This

means that: (a) where there is an objection to confirmation, as here, the Debtors' deductions for

purposes of their Plan are determined by the Means Test, and not by reference to Schedule J (11

U.S.C. §§ 1325(b)(3), 707(b)(2)); and (b) their applicable commitment period (that is, the length

of time that they will be required to pay under their Plan) will be 60 months, as opposed to 36

months for below-median debtors. 11 U.S.C. § 1325(b)(4)(A)(ii).

3.      Ms. Parquet is self-employed. She has a pet-sitting service, in which she employs

one other person. She receives 30% of the income and the other individual receives 70% of the

income.

4.      Mr. Parquet is employed by a non-profit fundraising organization.

5.      Mr. Parquet contributed $79.15 per pay period (approximately $160.00 per

month) to his employer's 401k plan from February 1, 2023, through the end of May 2023.

Beginning in June 2023, he increased his contributions to $300.00 per pay period, or

approximately $650.00 per month. DR Ex. 1.

6.      His employer matches his contributions up to the amount of $158.31 per month.

*A.  The Debtors' First Plan.*

7.      The Debtors filed a Means Test ("the Original Means Test") with the Petition.

Docket No. 1. This Means Test stated that the Debtors had negative monthly disposable income

2

of ($410.83), after taking a deduction in the amount of $650.00 for voluntary retirement deductions. *Id*. at p. 63, Lines 41, 45.

8.      The Debtors' first Plan called for them to pay $400.00 per month for 60 months, for a distribution to the unsecured creditors of 18% of their claims. Docket No. 2, ¶¶ 2, 5(A).

9.      On October 9, 2023, the Debtors filed an Amended Means Test. Docket No. 14 ("the Amended Means Test"). In their Amended Means Test, the Debtors stated that they had positive net monthly disposable income of $136.34, after again taking a deduction in the amount of $650.00 for voluntary retirement contributions. *Id*. at Lines 41, 45.

10.     Mr. Parquet testified that the Amended Means Test was an updated version of his and Ms. Parquet's financial condition, as of the filing of the case. For example, whereas the Original Means Test reflected $106,000.00 in gross income, the Amended Means Test stated that the Debtors had combined annual income of $112,000.00. TR. Ex. 3, Line 15b; TR. Ex. 4, Line 15b. The Debtors' income taxes appear to have decreased ($1,666.00 in the Original Means Test, versus $1,516.00 in the Amended Means Test), but their health insurance costs increased ($836.00 in the Original Means Test, versus $905.00 in the Amended Means Test). TR. Ex. 3, Lines 16, 25; TR. Ex. 4, Lines 16, 25.

11.     Finally, the Debtors acknowledged that Mr. Parquet's parents paid $210.00 per month toward his student loans during the six-month look back period.

12.     After a hearing, the Court sustained the Chapter 13 Trustee's Objections to the Debtors' Plan, with leave to amend. Docket No. 17 ("*Parquet I*").

   B.  *The Debtors' Second Amended Means Test and Amended Plan.*

13.     On November 14, 2023, the Debtors filed a second Amended Means Test and an Amended Plan. Docket Nos. 22, 23.

Case 23-11323-BFK   Doc 35   Filed 02/02/24   Entered 02/02/24 15:18:04   Desc Main
Document      Page 4 of 11


14.     The Debtors' second Amended Means Test made the following changes to their income and expenses: (a) the Amended Means Test added increased income of $250.00 per month to Mr. Parquet's income; (b) it deleted the parental support payments for the student loans in the amount of $210.00; and (c) it increased Mr. Parquet's contributions to his retirement account by $369.00.[2] Docket No. 22, Line 46.

15.     The net effect of these three changes in income and expenses was a decrease in the amount of $329.00, thereby decreasing the prior monthly disposable income from $476.58 to $147.58. *Id.*

16.     The Debtors' Amended Plan requires them to pay $400.00 per month for the first three months, and then $250.00 per month for the next 57 months, for a total of $15,450.00, and a distribution to the unsecured creditors of 10%. Docket No. 23, ¶¶ 2, 5.

17.     The Chapter 13 Trustee objected to the Amended Plan on the ground that it did not devote the Debtors' full disposable income in violation of Bankruptcy Code Section 1325(b)(1)(B), and on the ground that it violated the good faith requirement of Code Section 1325(a)(3). Docket No. 30.

18.     The Court heard the Debtors' evidence in support of confirmation of their Amended Plan. Mr. Parquet forthrightly acknowledged that he increased his voluntary retirement contributions from $79 per pay period to $300.00 after meeting with his bankruptcy counsel.

19.     Mr. Parquet also acknowledged that he and his wife asked his parents to stop paying the student loans, and they have done so.

20.     Schedules I and J attached to the Debtor's Amended Plan state that their monthly net income is $1,085.66. Docket No. 23, Schedule J, Line 23c.

---

[2]  The $369.00 is the result of subtracting the amount of $281.00 (Line 41) from Mr. Parquet's voluntary deduction of $650.00 per month.

4

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of

Reference entered by the District Court for this District on August 15, 1984. This is a core

proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

### I.    Disposable Income (11 U.S.C. § 1325(b)(1)(B)).

Section 1325(b)(1)(B) requires that, when a creditor or the Trustee objects to the

confirmation of their plan, debtors must either devote their full disposable income to their plan,

or must pay their creditors in full. For above-median debtors in Chapter 13, disposable income is

determined by reference to the Means Test. The Means Test was adopted in 2005 as a part of the

BAPCPA Amendments to the Bankruptcy Code. It was enacted "to help ensure that debtors who

*can* pay creditors *do* pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011)

(quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231–232, (2010))

(emphasis in original).

Part 1 of the Means Test requires debtors to state their average monthly income "from all

sources" for the six months preceding the bankruptcy case. 28 U.S.C. § 101(10A). The second

part of the form (Official Form 122C-2) involves the calculation of debtors' disposable income.

Part I, Lines 6-38, uses certain national standards (for food, clothing, and other items), and local

standards (primarily for housing).[3] Part 2 allows for qualified retirement deductions (Line 41)

and further allows for "special circumstances" for which the debtors "have no reasonable

alternative" (Line 43).[4]

---

[3] The Fourth Circuit recently held that debtors are entitled to use their actual mortgage payments where the payments exceed the local standards, thereby resulting in a greater deduction, and correspondingly, less disposable income to pay their creditors. *Bledsoe v. Cook*, 70 F.4th 746, 748 (4th Cir. 2023).

[4] Special circumstances require that "the circumstances be of a more severe nature than ordinary job changes or income fluctuations." *In re Burdett*, 2013 WL 865575, at *4 (Bankr. E.D. Va. Mar. 7, 2013). The Debtors have not claimed any special circumstances in this case.

Finally, Part 3 provides for changes to the debtors' income and expenses where circumstances "have changed or are virtually certain to change" after the date of the petition. Line 46. Line 46 is designed to reflect the Supreme Court's ruling in *Hamilton v. Lanning,* 560 U.S. 505, 517 (2010), which the Court noted in *Parquet I* is intended to apply "only in unusual cases;" in most cases, nothing more than the application of the Means Test is required. Docket No. 17, p. 4.  It is on this line that the battle is drawn in this case.

The Trustee argues that the Court should not allow Debtors' Line 46 adjustments because they all came about as the result of the Debtors' voluntary actions. Mr. Parquet acknowledged that he requested his parents to stop the payments on his student loans. He further acknowledged that he increased his voluntary contributions after he consulted with bankruptcy counsel. There is some support for the Trustee's position. In *In re Ponce*, 406 B.R. 490 (Bankr. M.D. Pa. 2009), the bankruptcy court held that it would consider a non-exclusive list of factors for *Lanning* adjustments, including whether the changes in circumstances were the results of the debtor's voluntary actions. *Id*. at 498. The court stated that its list of factors was similar to some of the pre-BAPCPA good faith factors. *Id.* The *Ponce* case highlights the problem of determining just how "unusual" changes in circumstances need to be to qualify under *Lanning*.

The Trustee in this case does not dispute that the increased voluntary contributions and the cessation of parental support are known and virtually certain to occur. The Trustee essentially conflates the "unusual" part of the *Lanning* inquiry with the voluntariness of the changed circumstances. On balance, the Court finds that the two adjustments fit neatly into *Lanning's* "known or virtually certain to occur" test and its "unusual" requirement. The Court finds that these adjustments are better addressed under the good faith test, discussed below.

The Court, therefore, overrules the Trustee's disposable income objection to the Debtors'
Amended Plan.

## II.    Good Faith (11 U.S.C. 1325(a)(3)).

Bankruptcy Code Section 1325(a)(3), made applicable to the Debtors' proposed Amended

Plan by Section 1329(b)(1), requires that the Debtor propose the Plan in good faith. "A

comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry

should be whether under the circumstances of the case there has been an abuse of the provisions,

purpose, or spirit of [the Chapter] in the proposal or plan . . . ." *Deans v. O'Donnell (In re*

*Deans),* 692 F.2d 968, 972 (4th Cir. 1982) (citing 9 Collier on Bankruptcy 9.20 at 319 (14th ed.

1978)). The Fourth Circuit has held that a non-exclusive list of factors might include:

> [N]ot only the percentage of proposed repayment, but also the debtor's financial
> situation, the period of time payment will be made, the debtor's employment history and
> prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy
> filings, the debtor's honesty in representing facts, and any unusual or exceptional
> problems facing the particular debtor.

*Id*.

As noted above, the Trustee argues that the changes were voluntarily incurred, and

therefore should be disallowed as deductions on the Means Test. The Debtors respond that they

are only doing what the law allows. In fact, they argue, it is counsel's job to make sure that they

are properly advised on the deductions to which they might legitimately be entitled. *See*

*Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, n. 6 (2010) ("advice to

refinance a mortgage or purchase a reliable car prior to filing because doing so will reduce the

debtor's interest rates or improve his ability to repay is not prohibited, as the promise of

enhanced financial prospects, rather than the anticipated filing, is the impelling cause. Advice to

incur additional debt to buy groceries, pay medical bills, or make other purchases 'reasonably

necessary for the support or maintenance of the debtor or a dependent of the debtor,' §

523(a)(2)(C)(ii)(II), is similarly permissible.") The Court will address the two adjustments,

below.

    *A. Requesting that the Parents Stop Paying the Student Loans.*

    Addressing first the Debtors' request that Mr. Parquet's parents stop paying his student

loans, the Court finds that this change in circumstances was not made in bad faith. The Debtors

realized, given the Court's decision in *Parquet I,* that the contributions constituted income, and

that the contributions, in effect, would require them to pay their creditors an additional $210.00

per month. In their counsel's view, the Debtors would be "crazy" not to request that these

contributions cease (although they no longer enjoy the benefit of having the student loans paid

down). The contributions are not a legally enforceable obligation; Mr. Parquet's parents could

stop making these contributions at any point in the case.

    The Court finds that there is no bad faith in the Debtors' request that Mr. Parquet's

parents stop contributing $210.00 per month to his student loan payments.

    B.  *The Increase in Voluntary Contributions*.

    The Debtors' increase in voluntary contributions to Mr. Parquet's 401k plan is a closer,

and more difficult question. In *In re Cantu,* this Court held that Bankruptcy Code Section

541((b)(7) allowed for voluntary contributions to retirements plans. 553 B.R. 565 (Bankr. E.D.

Va. 2016), *subsequently aff'd sub nom*, *Gorman v. Cantu (In re Cantu),* 713 F. App'x. 200 (4th

Cir. 2017). This Court went on to hold that good faith is an independent requirement for

confirmation, and that the Court still must consider the debtor's good faith. *Id*. at 577. *See also In

re Huston,* 635 B.R 164, 178-79 (Bankr. N.D. Ill. 2021) ("Even under the majority approach

[allowing voluntary contributions], most courts have acknowledged 'potential abuse' of that

approach 'is easily forestalled by the requirement of § 1325(a)(3) that plans must be 'proposed in good faith.' ")

In this case, Mr. Parquet increased his voluntary contribution to $600, which is 3.75 times the amount of his previous contribution of $160.00 per month. The Court recognizes that the good faith inquiry is a fact-specific one, tailored to meet the needs of individual cases. On the other hand, the Court concludes that it is useful for the public and the Bar to have a benchmark against which increases in voluntary contributions can be measured. The Court, therefore, holds that, absent highly unusual circumstances that may justify a greater increase in voluntary contributions, the Court will allow deductions in cases assigned to the undersigned Judge for increased voluntary contributions made during the six months preceding the filing of the bankruptcy case, or after the filing of the case and before confirmation, of the *greater* of: (a) 100% of the debtor's previous contributions (i.e., if the Debtor was contributing $300.00 per month, she will be entitled to an increased contribution of up to $600.00 per month); or (b) the amount of an employer's matching contributions (thus, if the Debtors in this case were not making any contributions, they would be entitled to contribute up to $158.31 per month). In this case, the Debtors contributed $79.15 per pay period, or approximately $160.00 per month. The Court will allow voluntary contributions on the Means Test of up to $320.00 per month.

The Court notes that the Debtors' Schedules I and J, attached to their Amended Plan, state that the Debtors have $1,085.00 in net monthly income. Although the Court is not substituting Schedules I and J for the Means Test calculations, the Court is satisfied from a good faith and fairness perspective that the Debtors can still make voluntary contributions of $600 per month, even though the deduction in that amount is disallowed on their Means Test.

The Court, therefore, will sustain the Trustee's Objection to confirmation on the good faith ground. The Debtors will be entitled to amend their Plan and their Means Test to include: (a) the increased income of $250.00 per month; (b) a cessation of the parents' monthly contributions; and (c) voluntary contributions of no more than $320.00 per month.

### Conclusion

It is therefore **ORDERED**:

A.      The Trustee's Objection to Confirmation (Docket No. 30) on the disposable income ground is overruled.

B.      The Trustee's Objection to Confirmation (Docket No. 30) on the good faith ground is sustained.

C.      The Debtors are granted leave to file an Amended Plan and Amended Means Test within 21 days of the entry of this Order. The failure to file an Amended Plan within the said 21 days may result in dismissal of this case.

D.      The Trustee's Motion to Dismiss Case (Docket No. 29) is continued to **Thursday, March 21, 2024, at 1:30 p.m.**

E.      The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: ___Feb 2 2024_____

Alexandria, Virginia

Copies to:

Karen Edwards Parquet
8410 Huerta Court, Apt. 166
Alexandria, VA 22309
*Debtor*

/s/ Brian F Kenney
_____
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: February 2, 2024

Tremayne Anthony Parquet
8410 Huerta Court, Apt. 166
Alexandria, VA 22309
*Joint Debtor*

Robert Sergio Brandt
600 Cameron Street
Alexandria, VA 22314
*Counsel for Debtors*

Thomas P. Gorman
300 N. Washington St., Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*

Gerard R. Vetter
1725 Duke Street, Suite 650
Alexandria, VA 22314
*U.S. Trustee*